CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

**WILLIAM T. LYONS JR.**
 *Individually and on Behalf of*
 *Others Similarly Situated*
8329 Old Kiln Road
Thurmont, MD  21788

 Plaintiff

v.                    Civil Case Number:
                        _____

**PNC BANK, NATIONAL ASSOCIATION**     C-02-CV-20-001388

249 Fifth Avenue
Pittsburgh, PA  15222-2707
SERVE ON:
CSC-Lawyers Incorporating Service Company,
 Resident Agent
7 St. Paul Street, Suite 820
Baltimore, MD  21202

 Defendant

**CLASS ACTION COMPLAINT**
**&**
**REQUEST FOR A JURY TRIAL**

Plaintiff, William R. Lyons, Jr. ("Lyons" or "Named Plaintiff" or "Plaintiff") files this Class Action Complaint and Request for Jury Trial against the Defendant, PNC Bank, National Association ("PNC" or "Defendant"). The action is filed on behalf of Lyons individually and on behalf a class of persons defined herein. For his complaint, the Plaintiff alleges and states:

1

**INTRODUCTION**

1. The Defendant regularly violates the Truth and Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") and commits unfair or deceptive trade practices when it unilaterally makes withdrawals of funds from deposit accounts held by Lyons and class members for payments allegedly due to the Defendant for separate credit card charges.

2. The term "credit card" as utilized under TILA (and herein) is defined as follows as "**any** card, plate, coupon book or **other credit device** existing for the purpose of obtaining money, property, labor, or services on credit." 15 U.S.C.A. § 1602(l)(emphasis added). This broad definition has been recognized to include open-end credit loans with account numbers and is not just limited to a piece of plastic. *United States v. Bice-Bey*, 701 F.2d 1086, 1092 (4th Cir. 1983); *Munoz v. Seventh Ave., Inc.*, No. 04 C 2219, 2004 WL 1593906 (N.D. Ill. July 15, 2004).

3. Under TILA, the term "open-end credit plan" denotes a plan "under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. §1602(i).

4. A Home Equity Line of Credit ("HELOC"), like those taken out and utilized by the Plaintiff and Class members from time to time, has been recognized as an open-end credit plan. *See e.g. Newland v. Morgan Stanley Private Bank, N.A.*, No. 3:15-CV-00309, 2018 WL 847774, at *4 (E.D. Tenn. Feb. 13, 2018)("HELOCs, however, are considered "open-

2

ended transactions" under TILA because debtors can draw on them continuously, up to the credit limit"; *McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101JFBWDW, 2008 WL 222524, at *4 (E.D.N.Y. Jan. 25, 2008)(collecting cases); Cote v. Countrywide Home Loans, Inc., No. 1:09-CV-845-CAM-LTW, 2010 WL 11646985, at *2 (N.D. Ga. Mar. 31, 2010). As such, an open-end HELOC loan is a credit card.

5. Upon information and belief, the Defendant's practices are institutionalized by the use of a software program or code used by the Defendant. PNC tracks the credit card accounts of Plaintiff and other class members along with the deposit accounts of the Plaintiff and others to enable the Defendant to make unilateral, unauthorized withdrawals from the deposit accounts held by the Plaintiff and class members.

## JURISDICTION AND VENUE

6. This Court also has jurisdiction asserted for the claims herein because PNC transacts business, performs work, has interests in real property, and provides services in Maryland and Anne Arundel County, Maryland. *See e.g. Pacific Mortg. and Inv. Group, Ltd. v. Horn*, 100 Md.App. 311, 324 (Md.App.,1994).

7. This Court also has jurisdiction for the claims asserted because the injuries caused by Shellpoint to the Plaintiffs and certain of the putative class members occurred in Maryland.

8. The Court has declaratory judgment authority pursuant to CTS & JUD. PROC. § 3-409.

9. Venue is properly before this Court because Lyons is a resident of and domiciled in Maryland at the time of the acts complained of in this Class Action complaint and because the injuries and losses claimed in this Complaint occurred in Maryland.

**PARTIES**

10. Lyons is a resident of Frederick County, Maryland and is a consumer customer of PNC.

11. PNC is a national bank based in Pittsburgh, Pennsylvania. PNC Bank National Association is the successor in interest to National City Bank, which it acquired and merged with on Nov. 7, 2009. PNC acquired no greater rights or interests in Lyon's open-end HELOC loan account and the similar open-end HELOC loan accounts of the Class members than that which National City had at the time of its acquisition. PNC is also a loan servicer subject to 12 U.S.C.A. § 2605.

**FACTUAL ALLEGATIONS**

12. During the time period subject to this action, Lyons maintained a deposit account with the Defendant and a credit card account, in the form of a HELOC open-end loan, which was opened primarily for his personal, family or household purposes.

13. Lyon's HELOC loan account was opened with National City Bank ("National City") on or about February 4, 2005. The material terms of Lyons HELOC loan with National City subject to this action were as follows:

4

a. The Parties agreed that the loan was "an open-end lined of credit" which Lyons could "use to obtain cash advances (Advances) from time to time."

b. National City issued a "credit card" for use of the HELOC loan account. Lyons was permitted to use and did use the card for cash Advances from ATM machines or purchases of goods or services, or for telephone or on-line banking Advances.

c. The HELOC loan account was assigned an account number.

d. The terms and conditions of Lyons' HELOC loan account could only be altered in writing if signed by all parties to the loan.

14. Lyons' deposit account with the Defendant was opened after PNC's acquisition of National City. At that time, and all periods since then, Lyons did not grant PNC a security interest in his deposit account in relation to his HELOC loan account. At no time, did PNC clearly or conspicuously even seek such a security interest in Lyons' deposit account.

15. From time to time Lyons has used his HELOC loan account for the purposes described in the previous paragraphs while incurring balances on the loan which increased and later decreased as he paid back sums that were borrowed and interest and fees imposed by National City and later PNC. Since its merger with National City and at all times relevant to this Complaint, PNC has also acted as the loan servicer of Lyon's HELOC loan account pursuant to 12 U.S.C.A. § 2605.

5

16. Plaintiff's deposit account was open and active at all times relevant to the Plaintiff's claims subject to this action. Plaintiff's HELOC loan account was also open and active at all times relevant to the Plaintiff's claims to this action.

17. On September 26, 2019, PNC made an unauthorized withdrawal from Lyon's deposit account in the amount of $1,396.97 for payment on his HELOC loan account with it.

18. Lyons did not authorize or direct any of the September 26, 2019 withdrawal from his deposit account.

19. Upon information and belief, the September 26, 2019 withdrawal by PNC was automatically made through its software program or code.

20. Because of PNC's unauthorized withdrawal from his deposit account for any payment on his HELOC loan account with it, Lyons wrote to PNC in written correspondence pursuant to 12 U.S.C.A. § 2605 and its implementing regulations and Com. Law § 13-316 to notify it of its errors ("QWR").

21. In his QWR Lyons notified PNC of its errors in servicing his mortgage and that it had no right to make the unauthorized transfer on September 26, 2019 for payments related to his HELOC loan account with it. In addition, Lyons asked PNC for information and documents it believed authorized it to do the transaction.

22. PNC received Lyons' QWR on November 4, 2019 at the address it publishes to borrowers like Lyons for such correspondence.

23. PNC did not timely respond to Lyons' QWR pursuant to 12 U.S.C.A. § 2605 and its implementing regulations and Com. Law § 13-316. Instead, it belatedly sent an incomplete and unfair and deceptive response to Lyons dated January 22, 2020.

24. PNC did not perform a reasonable investigation into Lyons' QWR. This conclusion is based upon the following:

   a. Lyons had asked for PNC to provide his with information and documents to supports its belief that it was authorized to make the September 26, 2019 withdrawal. However in its belated response to the QWR, PNC unfairly and deceptively suggested unsigned "pre-authorized debt check" authorized it to do so even though under TILA does not so authorize purported security interests after the fact.

   b. In PNC's belated response to the QWR it also failed to provide Lyons with any document he signed specifically authorizing the September 26, 2019 withdrawal and claimed instead that "the information [he] requested is outside the scope of what can be requested as the request was [purportedly] overly broad and unduly burdensome."

25. On February 26, 2020, PNC made another unauthorized withdrawal from Lyon's deposit account in the amount of $1,589.00 for payment on his HELOC loan account with it.

7

26. Lyons did not authorize or direct any of the February 26, 2020 withdrawal from his deposit account.

27. Upon information and belief, the February 26, 2020 withdrawal by PNC was automatically made through its software program or code.

28. In May 2020, Lyons satisfied and paid off his HELOC loan account with it. PNC received that payment in May 2020 but it falsely reported Lyons as delinquent in June 2020 to the credit reporting agencies even though it had received the sum it requested for the payoff of the loan before any credit reporting on HELOC loan account occurred in June 2020.

29. As a result of PNC's unauthorized September 26, 2019 and February 26, 2020 withdrawals from his deposit account, Lyons has sustained economic damages in the form of interest he would have earned from his deposit account by having the payment remain. Such interest is also a reflection that Lyons lost the use of the funds for what he wished to use it for.

30. Pursuant to TILA, Lyons is also entitled to statutory damages for PNC's unauthorized September 26, 2019 and February 26, 2020 withdrawals.

31. As a result of PNC's unreasonable investigation into Lyons' QWR, Lyons has sustained additional damages and losses including (i) annoyance and frustration that PNC did not respond timely to his QWR as required under the law, (ii) anger that PNC's response unfairly and deceptive response claims (incorrectly) it had a right to sums in his deposit account without his express authorization and attempt to claim it had such authorization

8

when it would be a violation of TILA for it to so claim, and (iii) fear that PNC will continue its practices and not correct its errors in the future—especially now given the current economic and social conditions.

## CLASS ALLEGATIONS

32. The Plaintiff contends that the Defendant's actions in regard to making unauthorized withdrawals from deposit accounts for amounts allegedly owed for HELOC loan account is not something that the Defendant has only done to him; upon information and belief, Defendant has made similar unauthorized withdraws from more than 100 other persons similar to Plaintiff.

33. Plaintiff contends that the withdrawals from the deposit account for his HELOC loan account is a routine and regular practice of the Defendant with all persons who have both a deposit account and HELOC loan account with Defendant. The practice is implemented by the Defendant through the use of its software and computer coding systems.

34. The Plaintiff further requests that the Court certify a Class pursuant to MD. RULE 2-231 consisting of the following persons:

> All persons who are residents of Maryland, Delaware, Virginia, West Virginia, and the District of Columbia who Defendant has made withdrawals from their deposit accounts for payment of a HELOC loan account originally established by National City in its Equity Reserve Agreement form in the one year preceding the filing of this Complaint.

35. The Plaintiff is a member of the Class defined in the previous paragraph and he estimates that there are more than 100 members of the Class.

36. PNC's business includes providing deposit accounts and open-end HELOC loan accounts to certain consumers including Lyons and the Class members.

37. HELOC loan accounts offered by the Defendant or its predecessors in interest include written terms and conditions. None of these conditions clearly and conspicuously require the Class members to grant any security interest in the Class members' deposit accounts also opened with the Defendant.

38. Upon information and belief, based upon the Defendant's written response to Lyon's QWR, its position is that it may make withdrawals from deposit accounts of the Plaintiff and Class members for payment of sums claimed due on their open-end HELOC loan accounts without having even obtained their consent through any timely, clear, and conspicuous disclosure.

39. The Defendant has and continues to make withdrawals from deposit accounts for open-end HELOC loan accounts of the Class members.

40. There are common questions of law and fact relating to the Class, including:

   a. Whether the Defendant's reference to subsequent correspondence and purported "pre-authorized debt check" permits it, after the fact, to make withdrawals from the Class members' deposit accounts for their open-end HELOC loan accounts;

    b. Whether the Defendant's actions violate the TILA;

    c. Whether the Defendant has made withdrawals from the deposit accounts of Class members for open-end HELOC loan accounts without timely and express (clear and conspicuous) authorization to do so;

    d. Whether the Class members are entitled to a return of any withdrawals taken by the Defendant from their deposit accounts for their open-end HELOC loan accounts;

    e. Whether the Class members are entitled to a recovery based on the sums withdrawn by the Defendant from their deposit accounts for their open-end HELOC loan accounts;

    f. Whether the Defendant can show any legal right to withdraw funds from Class Members' accounts; and

    g. Whether the Class is entitled to any statutory or actual damages from the Defendant.

41. The Defendant has acted on grounds that apply generally to all of the Class members.

42. There are questions of law and fact which are common to the Class and predominate over questions affecting only individual members. A class action is superior to other available methods for a fair and efficient adjudication of the controversy because such action is uniquely suited to determining the rights and damages to thousands of similarly situated individuals while minimizing the amount of legal resources which must be utilized to resolve the controversy.

11

43. The only individual questions concern the identification of Class members and the actual damages of each Class member. This information can be determined by a simple ministerial examination of the business records of the Defendant and mathematical calculations. Upon information and belief, Defendant maintains business records that consist of extensive and sophisticated computer records that can be searched, downloaded, and printed in <u>minutes</u>. Such business records are, of course, the same records that Defendant has used to support its electronic programs and coding systems. Such business records are admissible as an exception to hearsay and as a statement by a party.

44. Named Plaintiff's TILA claims are typical of the claims of the Class members.

45. Named Plaintiff is similarly situated with and has suffered similar damages as the other members of the Class. Named Plaintiff will fairly and adequately protect the interest of all Class members in the prosecution of this action.

46. Named Plaintiff has retained attorneys who are experienced in consumer protection laws and experienced in class actions.

47. Named Plaintiff's attorneys are adequate to represent the Class.

**<u>COUNT I :VIOLATION OF TRUTH IN LENDING ACT</u>**

48. Plaintiff incorporates the foregoing paragraphs. This claim is brought on behalf of the Plaintiff individuals and on behalf of the Class members similarly situated.

12

49. The Defendant's practices violate the Truth in Lending Act by seeking to take funds from deposit accounts for payment of open-end HELOC accounts.

50. Regulation Z, 12 C.F.R. § 226.12 (d) provides:

> (d) Offsets by card issuer prohibited.
>
> (1) A card issuer may not take any action, either before or after termination of credit card privileges, to offset a cardholder's indebtedness arising from a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer.

51. A credit card under TILA includes a credit device and the Plaintiff's and Class members' open-end HELOC loan accounts. 15 U.S.C.A. § 1602(l); *Bice-Bey*, 701 F.2d at 1092; *Munoz,* 2004 WL 1593906.

52. The Defendant claims its agreements with the Plaintiff and Class members provide it the right to take the action specifically prohibited by federal law—i.e. TILA.

53. The unilateral belief and 'after the fact' correspondence created by the Defendant does not qualify for the exemption under Regulation Z, 12 C.F.R. § 226.12 (d)(2). It is only permitted to acquire a valid security interest under TILA if it clearly and conspicuously discloses its interest and the Plaintiffs and Class members agree to that term in writing.

54. The Defendant maintains that it may make withdrawals from the deposit accounts of the Plaintiff and Class Members for debts related to their open-end HELOC accounts.

55. The Defendant has unfairly and deceptively taken money from the deposit accounts of Class members in violation of the Truth in Lending Act (Regulation Z, 12 C.F.R. § 226.12 (d)).

WHEREFORE, the Plaintiff prays on his behalf and on behalf of the Class for the following relief to be granted on the Complaint:

a. An Order certifying a class of persons as set forth herein for the claims asserted herein pursuant to MD. RULE 2-231;

b. An order appointing the Plaintiff as Class Representative of the Class;

c. An order appointing the Plaintiff's counsel as Class Counsel for the Class.

d. An award of actual and statutory damages in the sum in excess of $75,000.00 or other relief that the Class may be entitled to from the Defendant;

e. An award of costs, including attorney's fees as allowed by law; and

f. Such other and further relief that the nature of Plaintiff's cause may require.

**COUNT II: VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA"), 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.36, and 12 C.F.R. § 1024.35**

56. Plaintiff incorporates the foregoing paragraphs. This claim is brought on behalf of the Plaintiff individually only.

57. PNC had duty of care under 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.36, and 12 C.F.R. § 1024.35 to acknowledge in writing Lyons' QWR (including notices of error and requests for information) within five days and to respond to the QWR in writing within 30 days

14

(unless it seeks an extension of not more than 15 days) but it failed to timely respond or even acknowledge.

58. PNC also had duty of care under 12 C.F.R. § 1024.36 and 12 C.F.R. § 1024.35 to conduct a reasonable investigation of Lyon's QWR and it failed to do any reasonable investigation as demonstrated *supra* and including its: (i) failure to provide the information sought in the QWR and (ii) its pattern of making claims in writing to Plaintiff (which it intended for him to rely upon) by its authorized representatives which it knew were false and misleading.

59. As a direct and proximate result of these violations Lyons is entitled to his actual damages pursuant to 12 U.S.C.A. § 2605(f)(1)(A) described *supra*.

60. Based on Lyon's experiences described *supra*, PNC has a pattern and practice of violations of 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.36, and C.F.R. § 1024.35. This conclusion of PNC's pattern and practice is also supported public records of complaints received by consumers in relation to PNC's violations of 12 U.S.C.A. § 2605 including hundreds of such complaints received by the Office of Commissioner of Financial Regulation and the Consumer Financial Protection Bureau.

61. In light of PNC's pattern and practice violations of 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.36, and C.F.R. § 1024.35 described *supra* and Lyon's actual damages he is also entitled to statutory damages pursuant to 12 U.S.C.A. § 2605(f)(1)(B).

WHEREFORE, the Plaintiff prays on his behalf only for the following relief to be granted on the Complaint pursuant to RESPA and its implementing regulations:

a. An award of damages in the sum of no less than $20,000.00 from the Defendant;

b. An award of costs, including attorney's fees as allowed by law; and

c. Such other and further relief that the nature of Plaintiff's cause may require.

Respectfully submitted,

*//s//Phillip R. Robinson*

Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
Phone (301) 448-1304
phillip@marylandconsumer.com


*//ss//Scott C. Borison (with permission)*

Scott C. Borison
CPF # 9601290001
Borison Firm, LLC.
1400 S Charles St.
Baltimore MD 21230
Phone (301) 620-1016
Fax: (301) 620-1018
Scott@Borisonfirm.com
*Attorneys for the Plaintiff and Putative Class Members*

16

**RULED 20-201 CERTIFICATION**

I hereby certify that this filing does not contain any restricted information.

*/s/Phillip R. Robinson*

Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
301-448-1304
phillip@marylandconsumer.com
*Attorneys for the Plaintiff and Putative Class Members*

17

## JURY DEMAND

Plaintiff, on his behalf and on behalf of the putative Class members, by his undersigned counsel requests a jury trial in this matter.

//s//Phillip R. Robinson
_____
Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
Phone (301) 448-1304

*Attorneys for the Plaintiff and Putative Class Members*