**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **WILLIAM T. LYONS JR.,** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 1:20-cv-02234-SAG |
| **PNC BANK, N.A.,** | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

William Lyons, Jr. ("Plaintiff"), filed suit against PNC Bank, N.A. ("Defendant"), alleging violations of the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"). Currently pending is Defendant's Motion to Compel Arbitration, to Strike Class Action Demand, and to Stay Litigation ("the Motion"). ECF 10. I have reviewed the Motion, the opposition, the reply, and the parties' supplemental filings. ECF 10-1, 13, 16, 18, 19. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, as to the compulsion of arbitration and the striking of Plaintiff's class action demands in Count One of his Complaint, the Motion will be granted in part and denied in part. The Motion will be denied insofar as it seeks to stay litigation of Count Two pending arbitration.

## I.     Factual and Procedural Background

At this stage, there appears little dispute as to the basic facts of this case.[1]  Plaintiff obtained a Home Equity Line of Credit ("HELOC") from National City Bank ("National City")[2] on or about February 4, 2005.  ECF 3 ¶ 13.  At the closing, Plaintiff and National City signed an Equity Reserve Agreement ("HELOC Agreement"), which did not contain an arbitration clause or a class action waiver.  ECF 9-4.  The HELOC set a ten-year loan term and allowed Plaintiff to take draws up to a maximum amount of $149,650.00.  *Id.*

Separately, Plaintiff opened two deposit accounts at PNC: one on May 3, 2010, ECF 9-1, and one on July 6, 2016, ECF 9-2.  As part of each transaction, Plaintiff signed a statement "agreeing to be bound by the terms and conditions of PNC Bank's Account Agreement for Checking Accounts and Savings Accounts[.]"  *Id.*  The Account Agreement included a set-off provision authorizing Defendant to charge the deposit accounts for "any loans, overdrafts, obligations, or other indebtedness . . . now or hereafter owing to us by you . . . ."  ECF 9-3.  The Account Agreement also specifies that Plaintiff granted PNC a security interest in his deposit accounts.  *Id.*  While the Account Agreement did not, when first agreed to by Plaintiff in 2010, include an arbitration clause or class action waiver, it did include a change-in-terms provision allowing Defendant "to amend this Agreement . . . from time to time," with such amendments becoming "effective 30 days . . . after notice of the amendment is posted in our branches, or by such other method of notice as we may deem appropriate or as may be specifically required by applicable law."  *Id.*  In February 2013, Defendant used this change-in-terms provision to amend

---

[1] The parties filed their supplemental briefings simultaneously, such that neither had a formal opportunity to respond to the other.

[2] Defendant acquired National City in 2009 and is National City's successor in interest.  ECF 3 ¶ 11.

the Account Agreement to include an arbitration clause and class action waiver. ECF 18-1 ¶ 6. As part of the amendment process, Defendant posted the 2013 amendments in its branches, highlighted the change on each customer's monthly statement, and also provided its customers, including Plaintiff, the right to opt out of the arbitration clause. ECF 18-1 ¶¶ 6-8. Plaintiff never did so, despite opportunities in February 2013, June 2014, November 2015, and November 2017. ECF 18-1 ¶¶ 6, 11, 12, 15, 16.

On September 26, 2019, PNC used the set-off provision to make a payment due on the HELOC in the amount of $1,396.97. ECF 3 ¶ 17. To make this payment, PNC debited Plaintiff's deposit account ending 2553, which Plaintiff had opened with PNC on May 3, 2010. ECF 9 ¶ 17. On February 26, 2020, PNC used the set-off provision to apply another payment due on the HELOC, in the amount of $1,589.00. ECF 3 ¶ 25. To make this payment, PNC debited Plaintiff's deposit account ending 6411, which Plaintiff had opened with PNC on July 6, 2016. ECF 9 ¶ 25.

**II.     Standard of Review**

"Motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment," and "[w]hether the motion should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings." *PC Const. Co. v. City of Salisbury*, 871 F.Supp. 2d 475, 477-78 (D. Md. 2012); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 241-42 (4th Cir. 2017) (adopting the district court's use of the summary judgment standard). Because resolution of this dispute requires consideration of contracts and other materials outside the pleadings, this Court will consider those documents and will apply the summary judgment standard—though, as previously noted, there do not appear to be any significant disputes of fact at this stage.

In general, under the Federal Arbitration Act ("FAA"), court must stay any proceeding that involves an issue subject to arbitration under a written arbitration agreement. *See* 9 U.S.C. § 3. The FAA makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA for the purpose of "revers[ing] the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987). Under the FAA, a court must compel arbitration where (1) interstate commerce exists, (2) a valid written arbitration agreement exists, and (3) the dispute falls within the scope of the agreement. *See Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997); *see also* 9 U.S.C. §§ 3-4.

"[H]aving made the bargain to arbitrate, [a] party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26 (internal citations omitted). "That is the case even when the claims at issue are federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (internal citations omitted). The burden is on the party challenging arbitration to show that "Congress intended to preclude a waiver of a judicial forum" for the claim at issue. *See Gilmer*, 500 U.S. at 26 (internal citations omitted). "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." *Id.* (internal citations omitted).

**III.     Analysis**

   **A.  Motion to Compel Arbitration**

   **i.  The Scope of Dodd-Frank's Arbitration Ban**

Defendant attempts to compel arbitration using the Account Agreement governing Plaintiff's two different deposit accounts with the bank, which contain 1) a term permitting Defendant to garnish deposit accounts to pay off outstanding debts and 2) arbitration agreements for all matters that "arise[] out of or relate[] to" the Account Agreement.  Plaintiff responds that federal law prohibits arbitration clauses in the context of mortgage-related transactions like the HELOC and that, regardless, the specific arbitration agreements at issue here are invalid for lack of consideration and mutuality.

The disputed statutory provisions became law as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank").  While the FAA enshrines a general presumption in favor of arbitration, the Dodd-Frank Act "imposes, among its many initiatives, the refinement and restriction of" the policy favoring arbitration of certain claims.  *Pezza v. Investors Capital Corp.*, 767 F.Supp.2d 225, 226 (D. Mass. 2011) (quoting *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)).  Specifically, Dodd-Frank added 15 U.S.C. § 1639c(e) and 12 C.F.R. § 1026.36(h) to the Truth in Lending Act ("TILA"), the statute under which Plaintiff brought his first claim.  The relevant statutory language regarding arbitration states as follows:

**(e) Arbitration**

   **(1) In general.**  No residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction.

   . . .

> **(3) No waiver of statutory cause of action.** No provision of any residential mortgage loan or of any extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer, and no other agreement between the consumer and the creditor relating to the residential mortgage loan or extension of credit referred to in paragraph (1), shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States, or any other court of competent jurisdiction, pursuant to section 1640 of this title or any other provision of law, for damages or other relief in connection with any alleged violation of this section, any other provision of this subchapter, or any other Federal law.

15 U.S.C.A. § 1639c.  The implementing regulation, meanwhile, states:

> **(1) Arbitration.** A contract or other agreement for a consumer credit transaction secured by a dwelling (including a home equity line of credit secured by the consumer's principal dwelling) may not include terms that require arbitration or any other non-judicial procedure to resolve any controversy or settle any claims arising out of the transaction. This prohibition does not limit a consumer and creditor or any assignee from agreeing, after a dispute or claim under the transaction arises, to settle or use arbitration or other non-judicial procedure to resolve that dispute or claim.

12 C.F.R. § 1026.36.

There is limited precedent interpreting the scope of the foregoing provisions. It is clear from the plain language that, at the very least, mortgage notes and other security instruments directly tied to a mortgage loan cannot contain arbitration clauses, but the prohibition's reach beyond such clear cases remains unsettled. Against this backdrop, this Court must determine whether Plaintiff has carried his burden to show that Congress intended § 1639c to preclude arbitration where the dispute arises under a mortgage agreement, but the lender seeks to invoke an arbitration clause in a separate contract purportedly empowering it to unilaterally use funds from the mortgagee's deposit accounts to pay off the mortgage instrument. *See Gilmer*, 500 U.S. at 29 (establishing that it is a plaintiff's burden to show congressional intent to preclude arbitration).

Here, the Court finds the statutory language to encompass the arbitration clause in the Account Agreement, where applied to a claim arising out of a HELOC. The HELOC under which

the Plaintiff is bringing suit is, by any definition, an "extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer." 15 U.S.C.A. § 1639c(e)(1). As its name suggests, the HELOC is a line of credit that Plaintiff can draw against and that is secured by Plaintiff's home. Had an arbitration clause been included in the HELOC, then, there can be no doubt that it would have been voided by the Dodd-Frank arbitration ban. The HELOC itself does not contain an arbitration provision, however—instead, the arbitration clause is located in the separate Account Agreement, which Plaintiff agreed to when he opened his deposit accounts with Defendant. The Account Agreement also included language authorizing Defendant to use set-offs from the deposit accounts to collect any loan payments due and granting Defendant a security interest in the deposit accounts. ECF 9-3 at 11. Defendant relied on these provisions to unilaterally make payments on Plaintiff's HELOC using money from his deposit accounts on two different occasions. ECF 9 ¶ 17, 25. It is this connection upon which Defendant relies to argue that arbitration is required, despite the fact that the HELOC itself contains no arbitration clause. Since Plaintiff's claims "arise out of or relate to" Defendant's unilateral set-off payments and the Account Agreement allegedly authorizing them, Defendant says the Account Agreement's arbitration clause should control. The question is, then, whether the fact that the arbitration provision exists in a separate agreement leaves it beyond Dodd-Frank's purview, despite the fact that the provision was invoked in the context of HELOC payments.

Nothing in the statutory language restricts the covered mortgage credit transaction to the original loan documents. The statute refers only to "residential mortgage loan[s]" and "extension[s] of credit under an open end consumer credit plan," without specifying further what constitutes such "loans" or "plans". Defendant contends that the Consumer Financial Protection Bureau ("CFPB") has interpreted the scope of the arbitration ban as limited to the documents

memorializing a consumer's mortgage loan agreement, ECF 16 at 4, but that overstates the CFPB's guidance: the agency has merely articulated the common sense proposition that the prohibition does not "appl[y] to agreements that are not part of the credit transaction." *Loan Originator Compensation Requirements Under the Truth in Lending Act (Regulation Z)*, 78 Fed. Reg. 11280, 11388 (Feb. 13, 2013). It has not defined the outer scope of "the credit transaction," and in fact has specifically noted that "[t]he prohibition applies to the terms of the whole transaction, regardless of which particular document contains those terms." *Id.* Thus, a term is covered by the Dodd-Frank arbitration ban if it is part of "the whole transaction."

§ 1639c(e)(1)'s plain language does not exempt terms from the arbitration ban simply because they appear in a document that also governs a separate and distinct bank-depositor relationship. To conclude that the Account Agreement's arbitration clause is not part of the HELOC credit transaction would be to improperly ignore Defendant's own intertwining of the Agreement with the HELOC. Terms that provide mechanisms for the payment of outstanding balances of the HELOC logically lie at the very heart of the credit transaction. After all, what is more central to a loan than terms implicating how the creditor will be paid and, perhaps even more importantly, how the creditor can secure the loan against non-payment?

Indeed, it would be an extraordinary loophole in the statute to suggest it does not apply to this term providing Defendant with significant power to secure its HELOC loan simply because it is contained in a later-drafted document. Such interpretation would improperly allow Defendant to use the Account Agreement as both a sword and a shield. It would functionally eviscerate § 1639c(e)(1)'s ban on arbitration by allowing creditors to easily avoid the ban by memorializing key terms implicating the mortgage transaction in documents that also cover an ostensibly separate relationship between the parties.

Defendant's extensive reference to *CMH Homes, Inc. v. Sexton* is unavailing. 441 F. Supp. 3d 1202 (D.N.M. 2020). In *CMH Homes*, plaintiff financed and purchased a manufactured home, signing an arbitration agreement as part of the purchase agreement. *Id.* at 1205. Plaintiff later sought to cancel the purchase contract and brought suit, only for defendants to move to compel arbitration. *Id.* The court ultimately found that TILA's ban on arbitration clauses did not apply. It concluded that the dispute over revocation of the purchase arose out of the sale transaction rather the loan transaction, and § 1639c(e)(1) only applies to disputes arising out of credit transactions. *Id.* at 1208. *CMH Homes* is of little assistance to Defendant here, however, because this case unmistakably presents a "dispute[] concerning a credit transaction," which the *CMH Homes* court concluded that § 1639c(e)(1) plainly covered. The facts here, as alleged by Plaintiff, are that Defendant illegally used money from his deposit accounts to pay off the outstanding balance of his HELOC—the sort of settling up of an outstanding loan payment that unmistakably arises out of the credit transaction.[3]

Even if § 1639c(e)(1) applied solely to the documents directly constituting the mortgage and therefore did not cover the separate Account Agreement, the Agreement's terms allowing Defendant to pay an outstanding sum due on the HELOC certainly "relate to the residential mortgage loan" and would therefore be subject to the ban on arbitration clauses under § 1639c(e)(3) instead. Defendant argues at length that § 1639c(e)(3)'s language does not apply to

---

[3] Defendant's emphasis on the fact that it "seeks to enforce an Arbitration Clause set forth in the Account Agreement governing Plaintiff's deposit accounts, not in the HELOC Agreement governing Plaintiff's HELOC," ECF 16 at 6, ultimately confuses the issue. The critical decision point in *CMH Homes* was not where the arbitration agreement was located or out of which transaction it arose, but rather whether the *dispute* arose out of a credit transaction or not. Similarly, Defendant's focus on the fact that it acted pursuant to the Account Agreement, not the HELOC, matters little when Plaintiff's lawsuit explicitly bases its claims in violation of TILA's protections regarding the HELOC, not the Account Agreement. ECF 3 ¶¶ 49-51.

arbitration agreements, but his arguments fail for several reasons. First, § 1639c(e), of which § 1639c(e)(3) is a sub-part, is entitled "Arbitration." Defendant's attempt to categorize the latter as a separate "Waiver Ban" falls short, as the statute itself discusses waiver as *part of* its overarching arbitration section. *See Almandarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (internal citations omitted).

Second, while the plain language of § 1639c(e)(3) states that no provision "shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States. . . ., " Defendant now aims to bar Plaintiff from bringing an action in district court via this motion. Defendant states, correctly, that "a statute that creates a cause of action and that gives a plaintiff the right to bring the cause of action in court does not automatically preclude arbitration," citing extensive case law to this end. ECF 16 at 8-9. While "contractually required arbitration of claims satisfies the statutory prescription of civil liability in court," *Greenwood*, 565 U.S. at 101, § 1639c(e)(3) does not merely prescribe civil liability in court, but instead explicitly bars the waiver of one's right to have such liability determined in district court. That provision is unlike any addressed in the precedent Defendant cites. There is a substantive difference between, on the one hand, enshrining a cause of action but allowing agreements to arbitrate in lieu of pursuing it and, on the other hand, enforcing agreements to arbitrate where the statute clearly prohibits any waiver of the right to sue in district court. While the precedent cited by Defendant allows the former, the reasoning does not go so far as to justify the latter.

Third, Defendant's surplusage arguments are unpersuasive. The two subsections of § 1639c(e) serve distinct purposes with separate meanings. § 1639c(e)(1) states that mortgage loan agreements cannot contain arbitration clauses in any form. § 1639c(e)(3), meanwhile, applies to

10

a broader range of agreements—any that "relate" to a mortgage loan—but applies a narrower proscription: they cannot bar borrowers from bringing suit in district court to invoke statutory causes of action. § 1639c(e)(3) would permit, for example, agreements relating to mortgage loans requiring arbitration for common law causes of action. Thus, while there may be overlapping situations like this particular case in which both subsections of § 1639c(e) are implicated, the respective subsections serve distinct purposes, and there is no superfluity.

As a final attempt to stave off application of § 1639c(e) to its arbitration clause, Defendant suggests that the Account Agreement does not "relate to" the HELOC because the Agreement does not mention the HELOC specifically. In Defendant's view, the Account Agreement governs the relationship between a bank and its depositors separately from the consumer-mortgage relationship created in the HELOC. As outlined previously, this argument beggars belief where, as here, Defendant relied on the Agreement to pay off the HELOC by unilaterally taking funds from the deposit accounts in question and now seeks to compel arbitration using the Agreement in a dispute arising out of the HELOC. These circumstances are little different than in *Attix v. Carrington Mortg. Servs.*, in which the district court concluded that an agreement relating to how mortgage payments could be made via phone "related to" the mortgage. 2020 WL 5757624 (S.D. Fla. Sep. 16, 2020). Here, the Account Agreement contains a term that, per Defendant's own apparent interpretation of it, empowers it to take money from Plaintiff's account in order to satisfy outstanding HELOC debt. It is, then, an agreement that has a role in determining how the mortgage instrument is paid, and therefore it clearly "relates to" the mortgage just like the agreement in *Attix*. § 1639c(e)'s ban on arbitration clauses applies to the arbitration clause in the Account Agreement here, whether via § 1639c(e)(1), § 1639c(e)(3), or both.

### ii. The Retroactivity of Dodd-Frank's Arbitration Ban

While the Account Agreement's language falls within the scope of the Dodd-Frank provisions barring arbitration clauses, Defendant points out that one of the two relevant deposit accounts predates Dodd-Frank's effective date. *See* 78 Fed. Reg. at 11387 ("[T]he Bureau is providing an effective date of June 1, 2013."). Several courts have considered whether Dodd-Frank's restrictions apply retroactively to contracts entered before June 1, 2013. Many of those courts have concluded that § 1639c(e) and 12 C.F.R. § 1026.36(h) only apply prospectively. *See Trevisani v. Ocwen Loan Servicing, LLC*, No. 16-cv-63018, 2017 WL 7731792, at *5-6 (S.D. Fla. May 3, 2017); *Davies v. Green Tree Servicing, LLC*, Civil Action No. 3:14-1711, 2015 WL 3795621, at *11-19 (M.D. Pa. Jun. 18, 2015); *Beckwith v. Caliber Home Loans*, No. 3:15-cv-00581-RDP, 2015 U.S. Dist. LEXIS 78332, at *7- 10 (N.D. Ala. Jun. 17, 2015); *Weller*, 971 F. Supp. 2d at 1077-79.

This Court agrees. "Retroactivity is not favored in the law." *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208 (1988). Against the backdrop of this presumption against retroactivity, the fact that the statute does not include language evincing Congress's clear intent to give it retroactive effect is telling. *See Landgraf v. USI Film Products*, 511 U.S. 244, 259–60 (1994) (had Congress intended statute to have retroactive effect, "it surely would have used language comparable to . . . 'shall apply to all proceedings pending on or commenced after the date of enactment of this Act'") (internal citations omitted). Indeed, the presumption against retroactivity weighs especially strongly where retroactivity would "affect[] contractual or property rights, matters in which predictability and stability are of prime importance." *Id.* at 271. The contractual right to arbitrate is at the core of this dispute, and Supreme Court precedent makes clear that preserving established contractual expectations—like the expectation that a claim will

be arbitrated—is of the utmost import when determining retroactivity. The Dodd-Frank amendments codified at 15 U.S.C. § 1639c(e)(3) do not, therefore, operate retroactively.

Here, Plaintiff opened the deposit account ending 2553 on May 3, 2010 and opened the deposit account ending 6411 on July 6, 2016. ECF 9-1 & 9-2. The May 3, 2010 deposit account agreement was updated to include an arbitration provision and a class action waiver effective February 1, 2013, and Plaintiff did not opt out of said agreement within the time period specified by Defendant. ECF 18-1 ¶¶ 8-9. The updated Account Agreement's effective date of February 1, 2013 was several months prior to the June 1, 2013 effective date of Dodd-Frank's statutory provisions banning arbitration. Plaintiff's TILA claim is based on one setoff that PNC applied against the 2010 deposit account, and one setoff applied against the 2016 deposit account. Since Dodd-Frank's arbitration ban does not apply retroactively, any claims related to the 2010 deposit account (and its related 2013 amendment to the Account Agreement adding the arbitration agreement) remain subject to arbitration. Therefore, Plaintiff's TILA claim must be arbitrated, to the extent it relates to the 2010 deposit account. The TILA claim related to the 2016 deposit account, for the reasons stated above, is governed by Dodd-Frank, and must proceed in this Court.

### iii. The Enforceability of the Arbitration Agreement

Plaintiff raises a handful of additional arguments as to why, even if the Dodd-Frank statutory bar does not apply, the arbitration clause itself is invalid. Namely, he alleges that he never agreed to be bound to arbitrate, and that even if he did, the arbitration clause lacked both consideration and mutuality of obligation and is therefore illusory. ECF 19 at 2-4. These arguments lack merit. Maryland courts have explicitly affirmed that entities such as Defendant may amend customer agreements to include arbitration clauses, so long as the underlying customer agreement includes a change-in-terms provision and Defendant follows the applicable notice

procedures. *See DIRECTV, Inc. v. Mattingly*, 376 Md. 302 (2003) (recognizing that an arbitration provision added pursuant to a customer agreement's change-in-terms provision would have been enforceable had DIRECTV followed the notice procedures outlined in the agreement). Despite Plaintiff's contention to the contrary, the existence of a change-in-terms provision does not render an arbitration agreement illusory for lack of consideration or mutuality under Maryland law. *Harby v. Wachovia Bank, N.A.*, 172 Md. App. 415, 425-26, (2007) (enforcing arbitration clause where change-in-terms provision gave bank "the right to change the terms of this Agreement and the fees, charges and other terms and conditions described in other documents incorporated by reference" and required bank to "notify you in writing at least thirty calendar days before the change will take effect if the change is not in your favor.").

Here, when Plaintiff agreed to the 2010 version of the Account Agreement, it contained a change-in-term provision. Defendant went well above and beyond its own notice procedures when it amended the Agreement to include an arbitration clause later in 2013. It gave Plaintiff the opportunity to opt out from the arbitration at least four different times, to which he never responded. Thus, because the Account Agreement was properly amended to include an arbitration clause in accordance with Maryland law—and because this Agreement and the amendment both predate the effective date of the Dodd-Frank arbitration ban—Plaintiff's TILA claim must be arbitrated to the extent it relates to the deposit account opened in 2010.

### B. Motion to Strike Class Action Demand

The enforceability of a class action waiver is a question for the court to decide. *See Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 873 (4th Cir. 2016). The class action waiver found in the Account Agreement states that "*If either you or we elect to arbitrate a Claim*, neither you nor we will have the right . . . to participate in a class action . . . ." ECF 9-3 at 17 (emphasis added).

Its plain language explicitly makes the waiver contingent on arbitration. For Plaintiff's TILA claim arising out of the HELOC payments taken from the account created on June 2016, then, the class action waiver is not enforceable because the claim will proceed in this Court.

Because the claim related to the 2010 deposit account is subject to arbitration, Plaintiff cannot assert a class action as to that claim. Plaintiff's primary argument to the contrary relies on § 1639c(e)(3)'s ban on waivers of statutory causes of action, ECF 13 at 11, but even if Dodd-Frank does preclude waiver of his class action right, it cannot be retroactively applied to the 2013 Account Agreement and related deposit account, as outlined in Section III(A)(ii). Plaintiff also points to the fact that he never agreed to arbitrate or waive his class action rights as part of the HELOC agreement, *id.* at 13, but that does not obviate the fact that he *did* agree to arbitration and a class action waiver when he declined to opt out of the 2013 amendment to the Account Agreement. By failing to opt out, despite notice and multiple opportunities to do so, he allowed Defendant to include the arbitration and class action waiver provisions, which apply to any claim that "arises out of or relates to" the Account Agreement. ECF 9-3 at 15. Plaintiff's TILA claim certainly "relates to" the Agreement, particularly given the FAA's broad presumption in favor of arbitrability.

### C. Motion to Stay RESPA Claim Pending Arbitration

Defendant's arguments in favor of staying the RESPA claim are predicated on its belief that resolution of this claim would be impacted by the outcome of the TILA claim. Therefore, Defendant posits, deferring proceedings until the TILA claim is resolved via arbitration would promote judicial economy and conserve the parties' resources. However, because Plaintiff's TILA claim involving the deposit account opened in 2016 will proceed in this forum, it would be

inefficient to stay the RESPA claim. The claims will be heard together, and the Motion to Stay is denied.

**IV.     Conclusion**

For the reasons set forth above, Defendant's Motion to Compel Arbitration, to Strike Class Action Demand, and to Stay Litigation, ECF 10, will be granted in part and denied in part. Specifically, with regard to Plaintiff's Count One TILA claim pertaining to the HELOC payment taken from the 2010 deposit account, the Motion will be granted—arbitration will be compelled and the class action demand will be stricken. With regard to Plaintiff's Count One TILA claim pertaining to the HELOC payment taken from the 2016 deposit account, the Motion will be denied, and the claim will be permitted to proceed in this Court, along with its accompanying class action demand. Defendants' Motion will be denied insofar as it seeks to stay litigation of Count Two of the Complaint pending resolution of the arbitration.[4]

Dated:    January 6, 2021                                    /s/
                                                     Stephanie A. Gallagher
                                                     United States District Judge

---

[4] This Court will not dictate to the parties when the arbitration should proceed vis-à-vis this litigation, despite some potential risk of inconsistent verdicts between the arbitrated and litigated claims.