## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **WILLIAM T. LYONS JR.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Case No. SAG-20-02234** |
| | * | |
| **PNC BANK, N.A.,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### <u>MEMORANDUM OPINION</u>

This case involves a dispute between Defendant PNC Bank, N.A. ("PNC") and its customer, Plaintiff William T. Lyons Jr. ("Lyons") regarding payments towards Lyons's home equity line of credit ("HELOC") account that were debited from his PNC deposit accounts without his express consent. Following an interlocutory appeal of a motion to compel arbitration, PNC has now filed a Motion for Judgment on the Pleadings, ECF 47. This Court has reviewed the motion and the responsive filings. ECF 55, 58. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth herein, PNC's motion will be granted.

### I.    Background

The following facts are derived from the Complaint, the Verified Answer, and the exhibits attached thereto. ECF 3, 9. In February, 2005, Lyons opened a HELOC account with National City Bank ("National City") to use for personal, family, or household purposes. ECF 3 ¶¶ 12, 13. National City issued Lyons a "credit card" he could use to obtain cash advances or to make purchases using HELOC loan funds. *Id.* ¶ 13. In November, 2009, PNC acquired and merged with National City, taking over its accounts including Lyons's HELOC loan, for which it became

the loan servicer.  *Id.* ¶¶ 11, 15.  Sometime after the acquisition, Lyons opened a deposit account with PNC.  *Id.* ¶ 14.

On September 26, 2019, PNC withdrew $1,396.97 from Lyons's deposit account to make an outstanding payment on his HELOC loan account.  *Id.* ¶ 17.  Lyons wrote to PNC to notify it of "its errors in servicing his mortgage and that it had no right to make the unauthorized transfer on September 26, 2019 for payments related to his HELOC loan account."  *Id.* ¶ 21; ECF 9-5.  The correspondence, which PNC received on November 4, 2019, also asked PNC to provide the information and documents it believed authorized the withdrawal transaction.  ECF 3 ¶ 21.

More than sixty days later, on January 22, 2020, PNC responded to Lyons suggesting that it had a "pre authorized debt check" authorizing the withdrawals, and declining to provide certain additional documentation and information because of the breadth of Lyons's request.  *Id.* ¶¶ 23, 24, ECF 9-6.  On February 26, 2020, PNC withdrew another $1,589.00 from Lyons's deposit account to make another payment towards his HELOC loan account.  ECF 3 ¶ 25.

Lyons claims that PNC's unauthorized withdrawals from his account caused him to suffer "economic damages in the form of interest he would have earned from his deposit account by having the payment remain," statutory damages, and damages resulting from annoyance, frustration, anger, and fear.  *Id.* ¶¶ 29-31.  Lyons also claims that PNC has a pattern and practice of not complying with qualified written requests ("QWRs") from its customers, leading to "hundreds of such complaints received by the Office of Commissioner of Financial Regulation and the Consumer Financial Protection Bureau."  *Id.* ¶ 60.

## II.    Legal Standard

"A Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)."  *Bierman Fam. Farm, LLC v. United Farm Fam. Ins.*

*Co.*, 265 F. Supp. 3d 633, 637 n.5 (D. Md. 2017).  In assessing such a motion, then, the court must "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  The factual allegations of the complaint, assumed to be true, "must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The plaintiff's obligation is to show the "'grounds' of his 'entitle[ment] to relief,'" offering "more than labels and conclusions." *Id.* (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).  It is not sufficient that the well-pleaded facts suggest "the mere possibility" of liability.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face,'" meaning that the court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

Granting a Rule 12(c) motion, however, is not tantamount to a dismissal with prejudice. *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 501 n.7 (E.D. Pa. 2014).  "[D]ismissal of claims upon a motion or judgment on the pleadings *can* be with prejudice, if amendment would be futile, but there is certainly no categorical rule that judgment on the pleadings is per se with prejudice." *Id.* at 501 (emphasis in original).

## III.    Analysis

### A.  Law of the Case Doctrine

While this Court agrees that this case presents in an unusual procedural posture, it disagrees with Lyons that PNC is barred from filing this motion.  In lieu of a Rule 12(b)(6) motion to dismiss, PNC filed a Verified Answer on the same date it moved to compel arbitration.  ECF 9, 10.  This Court granted in part and denied in part the motion to compel arbitration, and both parties appealed

that ruling to the United States Court of Appeals for the Fourth Circuit.  ECF 20, 21.  The Fourth Circuit eventually reversed the portion of this Court's opinion compelling arbitration of some of Lyons's claims, and returned the case to this Court for disposition in its entirety.  ECF 39, 40. PNC then filed the instant Motion for Judgment on the Pleadings pursuant to Rule 12(c), which can be filed "[a]fter the pleadings are closed – but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  PNC's motion addresses issues that could also have been presented as a Rule 12(b)(6) motion to dismiss.  ECF 47.

Rule 12(b)(6) arguments are not waived simply by a party's failure to file a motion under that subsection.  *See* Fed. R. Civ. P. 12(h)(2) (noting that failure to state a claim may also be raised by a motion under Rule 12(c)).  Thus, PNC did not have to make its substantive arguments for dismissal before advancing its procedural argument that Lyons's claims were not properly adjudicated in this forum.  In fact, it did not wish to raise or litigate the merits of its claims in this Court, because it potentially could have waived its right to enforce arbitration by doing so.  *See Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 141 (4th Cir. 2018) (finding that "litigation activity aimed at obtaining a favorable ruling on the merits of the case" waives a party's right to invoke arbitration).  Instead, by filing its Verified Answer, PNC simply "closed" the pleadings in this case.  Because no trial date has yet been set, the filing of this motion will not delay trial.  Thus, PNC presently meets the Rule 12(c) criteria and is permitted to move for judgment on the pleadings.

Lyons's suggestion that the current merits-based issues were somehow "presented" to this Court in the previous stages of this case, or should have been litigated in the Fourth Circuit on appeal, is entirely unpersuasive.  This Court's earlier opinion, and the resulting appeal, focused exclusively on the enforceability of the arbitration clauses in the parties' account agreements.  *See,*

*e.g.*, ECF 20, 39-1; *see also United States v. Stanley*, 483 U.S. 669, 677 (1987) (noting that the "scope of the issues open to the court of appeals is closely limited to the order appealed from [and] [t]he court of appeals will not consider matters that were ruled upon in other orders."). The law of the case doctrine, therefore, does not bar PNC's current arguments.

### B. TILA

Lyons invokes TILA's subsection 15 U.S.C. § 1666h(a), which reads:

A card issuer may not take any action to offset a cardholder's indebtedness arising in connection with a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer unless –

(1) such action was previously authorized in writing by the cardholder in accordance with a credit plan whereby the cardholder agrees periodically to pay debts incurred in his open end credit account by permitting the card holder periodically to deduct all or a portion of such debt from the cardholder's deposit account.

TILA's implementing regulation provides certain relevant definitions. Specifically, Regulation Z reiterates the necessary involvement of a "credit card plan" in the prohibited conduct. *See* 12 C.F.R. § 1026.12(d)(1) ("A card issuer may not take any action, either before or after termination of credit card privileges, to offset a cardholder's indebtedness arising from a consumer credit transaction <u>under the relevant credit card plan</u> against funds of the cardholder held on deposit with the card issuer." (emphasis added)). It expressly defines "credit card account under an open-end (not home-secured) consumer credit plan" to <u>exclude</u> "a home-equity plan . . . that is accessed by a credit card." 12 C.F.R. § 1026.2(a)(15)(ii).

Lyons tries to argue that his HELOC is, in fact, a credit card. While TILA defines "credit card" as "any card, plate, coupon book or other credit device existing for the purpose of obtaining money . . . on credit," 15 U.S.C. § 1602(1), the relevant issue is the definition of "credit card plan," not just "credit card." The parties concur that National City issued a credit card to allow Lyons to

access his HELOC.  But his loan was a HELOC, or a home equity plan, not a credit card plan, and Regulation Z clearly provides that those two types of accounts are distinct.  In fact, other sections of TILA and its implementing regulations discuss the separate rules applicable to "home equity plans."  *See, e.g.*, 15 U.S.C. § 1647, 12 C.F.R. § 1026.6(a).  Home equity plans, which are secured by real property, are simply different from credit card plans, which are not.[1]

Lyons's repeated appeal to the fact that TILA is a remedial statute is unavailing.  Congress provided that § 1666h(a) refers only to payments towards a credit card plan, and this Court cannot use a canon of construction to alter that express language.  *See Chapman v. United States*, 500 U.S. 453, 464 (1991) (noting that "a canon of construction" "is useful in close cases, but it is not a license for the judiciary to rewrite language enacted by the legislature.").  Because Lyons's HELOC is not a credit card plan, the provisions of § 1666h(a) do not apply to his account. Judgment on the pleadings as to Count One, Lyons's TILA claim, will therefore be granted.

### C. RESPA

Lyons's RESPA claim is that PNC failed to respond timely and adequately to his correspondence notifying it of an error in his mortgage servicing and requesting documentation and information.  Lyons asserts that his letter was a QWR as defined by RESPA, which would have required PNC to investigate and respond within thirty business days.  ECF 55 at 19-21.  PNC responds that HELOCs are expressly excluded, in RESPA's implementing regulations, from the classes of transactions covered by RESPA.  ECF 58 at 9-10.

---

[1] As a matter of policy, it is understandable why Congress might give financial institutions more leeway to allow withdrawals from depository accounts when there is outstanding debt on a HELOC if such action might preserve a customer's home.  No such loss of a basic necessity is associated with collections efforts on an unpaid credit card account.

A review of the applicable statutes and regulations is instructive.  RESPA itself defines the scope of its coverage broadly as "any loan[] which is secured by a first or subordinate lien on residential real property. . . ." 12 U.S.C. § 2602(1)(A).  Its implementing regulation, however, Regulation X, defines "mortgage loan" as "any federally regulated mortgage loan, as that term is defined in § 1024.2 subject to the exemptions in § 1024.5(b), but does not include open-end lines of credit (home equity plans)."  12 C.F.R. § 1024.31.  The CFPB has explained that it believed it was "necessary and appropriate at this time not to apply [RESPA's] requirements" to open-end credit like HELOCs, because:

> [S]eparate error resolution and information request requirements exist under Regulation Z for open-end lines of credit . . . . The Bureau believes that it would contravene the consumer protection purposes of RESPA for servicers to expend resources complying with overlapping or unnecessary requirements that would not benefit consumers.

Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 10,721-22 (Feb. 14, 2013).  Congress had expressly delegated to the CFPB the authority to exempt certain transactions from RESPA's protections where the CFPB believed such action to be necessary.  12 U.S.C. § 2617(a) ("The Bureau is authorized to . . . grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter.")

This regulatory background has resulted in a distinct division amongst the courts who have considered whether RESPA's provisions apply to HELOC loans.  Some courts have adhered to Regulation X and have excluded HELOCs from RESPA's protections. *See, e.g.*, *Chamberlain v. Specialized Loan Servicing, LLC*, Civ. No. 21-3541-HSG, 2021 WL 2383340, at *2 (N.D. Cal. June 10, 2021); *Mackey v. Washington Mut. Bank, F.A.*, Civ. No. 18-9048-PSG (FFMx), 2019 WL 3084276, at *6 (C.D. Cal. May 23, 2019).  Other courts have determined that Regulation X's

exclusion of HELOCs from RESPA's scope is in direct conflict with Congress's intent to apply RESPA to "any loan[] which is secured by a first or subordinate lien on residential real property. . . ." 12 U.S.C. § 2602(1)(A); *see, e.g.*, *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 407-08 (E.D.N.Y. 2012); *Cortez v. Keystone Bank*, Civ. No. 98-2457, 2000 WL 536666, at *10-14 (E.D. Pa. May 2, 2000); *Herrmann v. Wells Fargo Bank, N.A.*, 529 F. Supp. 3d 549, 559 (W.D. Va. 2021).  The Fourth Circuit has not yet taken sides in this dispute.

In this Court's view, Congress's express delegation to the CFPB of authority to grant reasonable exemptions for certain classes of transactions is dispositive.  While it is true that Congress intended RESPA to apply to "any loan[] . . . secured by a first or subordinate lien on residential real property[,]" 12 U.S.C. § 2602(1)(A), Congress also expressly intended to allow the CFPB to carve out exceptions to that broad application.  12 U.S.C. § 2617(a).  This Court, therefore, views Regulation X's exemption of HELOCs from RESPA's scope as consistent with, rather than contrary to, RESPA's statutory text.  And, as noted above, the CFPB has explained that it believes consumers are better protected by having a single set of error resolution and information request requirements applicable to open-end lines of credit like HELOCs, without layering RESPA's provisions on top of Regulation Z's requirements.  Thus, this Court concurs with the *Chamberlain/Mackey* line of cases and finds that under Regulation X, RESPA is inapplicable to HELOC loans like Lyons's.  Judgment on the pleadings will also be granted as to Count Two.

### IV.    Conclusion

For the reasons set forth above, PNC's Motion for Judgment on the Pleadings, ECF 47, will be GRANTED. So as not to foreclose Lyons's ability to bring claims under some other provisions of TILA or RESPA, dismissal will be without prejudice.  However, if no motion for

leave to amend is filed within fourteen days of the date of this opinion, dismissal will convert to dismissal with prejudice and the case will be closed.  A separate Order follows.


Dated:  August 2, 2022                                                    /s/
                                                   _____
                                                   Stephanie A. Gallagher
                                                   United States District Judge